

1  NORMAN BARTSCH HERTERICH
   265 Cumberland St.
2  San Francisco, CA 94114
   Telephone: (415) 552-2224
3  E-mail: normanherterich@sbcglobal.net

4  Pro Se Plaintiff

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  NORMAN BARTSCH HERTERICH,          Case No.

12                   Plaintiff,         COMPLAINT FOR RECOVERY OF, OR
                                        JUST COMPENSATION OR MONEY
13  vs.                                 DAMAGES FOR, PRIVATE PROPERTY
                                        UNREASONABLY SEIZED IN VIOLATION
14  MARY E. WISS, ROBERT L. DONDERO,    OF EQUAL PROTECTION AND WITHOUT
    SANDRA L. MARGULIES, DIANA          DUE PROCESS AND TAKEN FOR PUBLIC
15  BECTON, TANI GORRE CANTIL-          USE
    SAKAUYE, MING WILLIAM CHIN,
16  CAROL ANN CORRIGAN, MARVIN RAY      DEMAND FOR JURY TRIAL
    BAXTER, KATHRYN MICKLE
17  WERDEGAR, GOODWIN HON LIU,
    MARIANO-FLORENTINO CUÉLLAR,
18  AND LEONDRA REID KRUGER,

19

20                   Defendants.

21

22

23

24

25

26

27

28

                                  1
                             COMPLAINT

# TABLE OF CONTENTS

JURISDICTION AND VENUE ........................................................................ 4

PARTIES ............................................................................................................ 4

INTRODUCTION ............................................................................................... 5

COMMON ALLEGATIONS ............................................................................... 9

    A.  Herterich filed the Pretermission Petition because he was Bartsch's child whom Bartsch did not have in mind when the Will was executed. ................... 9

        a.  Herterich was Bartsch's child and only heir. ........................................... 9

        b.  In the Will Bartsch did not mention Herterich, and Bartsch instead declared that he had had no children. .................................................... 10

        c.  There was no indication that Bartsch had Herterich in mind when Bartsch executed the Will. ....................................................................... 10

        d.  Herterich filed the Pretermission Petition so that he could receive a statutory share of Bartsch's assets notwithstanding the Will. ............ 11

        e.  After Herterich filed the Pretermission Petition, further discovery confirmed that Bartsch did not have Herterich in mind when Bartsch executed the Will. ....................................................................... 13

    B.  The MSJ sought to defeat the Pretermission Petition by conclusively establishing that in 2007 Bartsch was aware that Herterich was his child. ..... 15

        a.  The MSJ relied on extrinsic evidence without claiming there was an ambiguity or a mistake in the Will. .................................................... 15

        b.  The MSJ stated without evidence that Bartsch had paid child support for Herterich until Herterich turned 21 in 1982. ....................... 15

        c.  The MSJ relied in part on the 1963 Paternity Order. .............................. 16

        d.  The MSJ relied in part on the unauthenticated Seelander Document, which purported to date from the 1990s. ........................... 16

        e.  The MSJ relied in part on deposition testimony which did not support Peltner's assertion that in 2007 Traeg and Bartsch had a conversation in which they specifically referred to Herterich as Bartsch's child and heir whom Bartsch wanted to disinherit. ............... 18

    C.  Herterich objected to the extrinsic evidence on which the MSJ relied. .......... 19

**COMPLAINT**

D.  Relying on extrinsic evidence, Wiss granted the MSJ. .................................... 20

E.  Relying on extrinsic evidence, the Appellate Justices affirmed Wiss's Pretermission Order in *Bartsch II*. .................................................................... 22

F.  The Supreme Court Justices declined to review *Bartsch II*. ........................... 24

G.  After the Pretermission Petition was finally determined Peltner and Traeg, under oath in the Civil Fraud Action, contradicted their earlier material assertions in the Pretermission Proceeding that on the day the Will was executed Traeg and Bartsch referred to Herterich as Bartsch's child and heir whom Bartsch wanted to disinherit. .......................................... 25

H.  In *Duke* the Supreme Court retrospectively held that an unambiguous will can be reformed if specific requirements are met. .................................. 26

I.  Herterich unsuccessfully asked the state courts to bring the adjudications in the Pretermission Proceeding into compliance with the retrospectively effective requirements for reformation set forth in *Duke*. ................................ 27

    a.  Wiss refused to reconsider the Pretermission Order *sua sponte*. .......... 27

    b.  The Appellate Court refused to recall the remittitur in *Bartsch II*. ....... 29

    c.  The California Supreme Court denied Herterich's petition to review the Appellate Court's refusal to recall the remittitur in *Bartsch II*. .............................................................................................. 29

J.  After *Bartsch II* Herterich diligently exhausted state law remedies. ............... 30

K.  Defendants knowingly and intentionally treated Herterich differently from similarly situated persons, to Herterich's detriment. .............................. 31

CLAIM 1: FOR DENYING HERTERICH EQUAL PROTECTION OF THE LAWS ... 36

CLAIM 2: FOR DEPRIVING HERTERICH OF PROPERTY WITHOUT DUE PROCESS OF LAW ....................................................................................... 37

CLAIM 3: FOR UNREASONABLE SEIZURE OF HERTERICH'S PROPERTY ........ 39

CLAIM 4: FOR JUST COMPENSATION FOR PRIVATE PROPERTY TAKEN FROM HERTERICH FOR PUBLIC USE ...................................................... 40

PRAYER FOR RELIEF ................................................................................................. 41

DEMAND FOR JURY TRIAL ...................................................................................... 42

**COMPLAINT**

**JURISDICTION AND VENUE**

1.     **Jurisdiction.** This action is brought under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983. Jurisdiction is conferred under 28 U.S.C. §§ 1331 and 1343, as applicable to actions brought for the redress of violations of a plaintiff's constitutional and civil rights under the United States Constitution.

2.     **Venue.** Venue in the Northern District of California is proper under 28 U.S.C. § 1391(b) and (c) because the events giving rise to this claim occurred within the district, and because some or all defendants reside and/or maintain an office in the district.

3.     **Intradistrict Assignment.** This matter should be assigned to the San Francisco Division of this Court because the events giving rise to this claim occurred in San Francisco County, and because some or all defendants reside and/or maintain an office in San Francisco.

**PARTIES**

4.     Plaintiff Norman Bartsch Herterich ("Plaintiff" or "Herterich") is, and was at all times relevant, a resident of San Francisco, California.

5.     Defendant Mary E. Wiss ("Wiss") is, and was at all times relevant, a Judge of the San Francisco Superior Court ("the Superior Court"). Wiss is employed and maintains an office in San Francisco, California.

6.     Defendant Robert L. Dondero ("Dondero") was at all times relevant a Justice of Division One of the First District Court of Appeal of the State of California ("the Appellate Court").

7.     Defendant Sandra L. Margulies ("Margulies") is, and was at all times relevant, a Justice of the Appellate Court. Margulies is employed and maintains an office in San Francisco, California.

8. Defendant Diana Becton ("Becton") was at all times relevant a Judge of the Contra Costa County Superior Court and as such was assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution, to the Appellate Court.

9. Dondero, Margulies, and Becton are collectively referred to herein as "the Appellate Justices."

10. Defendants Tani Gorre Cantil-Sakauye ("Cantil-Sakauye"), Ming William Chin ("Chin"), Carol Ann Corrigan ("Corrigan"), Marvin Ray Baxter ("Baxter"), Kathryn Mickle Werdegar ("Werdegar"), Goodwin Hon Liu ("Liu"), Mariano-Florentino Cuéllar ("Cuéllar"), and Leondra Reid Kruger ("Kruger") (collectively "the Supreme Court Justices") were at all times relevant Justices of the Supreme Court of the State of California ("the California Supreme Court"). Cantil-Sakauye, Corrigan, Liu, Cuéllar, and Kruger are currently employed as Justices of the Supreme Court of the State of California, and as such each maintains an office in San Francisco, California.

11. Wiss, the Appellate Justices, and the Supreme Court Justices (collectively, "Defendants") are all parties defendant in both their individual capacities and their official capacities as judicial officers.

12. Defendants at all times herein mentioned were the agents and employees of their co-defendants and in doing the things hereinafter alleged were acting within the course and scope of such agency and the permission and consent of their co-defendants.

13. Defendants at all times herein mentioned had actual or constructive knowledge of all material facts known to, and all material acts and omissions of, their co-defendants and the agents and employees of their co-defendants. Defendants' acts and omissions were informed by such knowledge.

## INTRODUCTION

14. The instant federal case arises from prior state probate court proceedings ("the Probate Proceedings") concerning the estate of Plaintiff Herterich's father, Hans Herbert Bartsch ("Bartsch"). One of the Probate Proceedings was a proceeding ("the

1   Pretermission Proceeding") which concerned Herterich's claim that he was a pretermitted

2   (or "omitted") child under Bartsch's purported will ("the Will). The Defendants are all

3   state court judges and justices who presided over some aspect of the Pretermission

4   Proceeding. Herterich alleges that Defendants' conduct in the Pretermission Proceeding

5   exceeded the normal bounds of the adjudicative process to such an extent that the conduct

6   violated Herterich's Constitutional rights. In the instant federal case Herterich seeks a

7   remedy for Defendants' violation in the Pretermission Proceeding of Herterich's rights

8   under Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

9          15.    "Pretermission" is a frequently misunderstood legal concept which arises

10   from and gives effect to common-law and statutory requirements that a testator have his or

11   her spouse and children "in mind" when executing a testamentary instrument which

12   reduces or eliminates the inheritance which the spouse or children would otherwise

13   receive in the absence of such an instrument. These common-law and statutory

14   requirements protect from unintended disinheritance the close family members to whom

15   the testator owed numerous duties while alive and for whom the law presumes the testator

16   would provide after death. These requirements do not limit the testator's testamentary

17   freedom in any way and are easily satisfied. The age-old and near-universal practice of

18   naming one's spouse and children in one's will and identifying them as such conclusively

19   prevents those persons from bringing pretermission claims.

20          16.    The law presumes that Bartsch had Herterich in mind as his child when the

21   Will was executed, and in the Pretermission Proceeding it was Herterich's burden to prove

22   that Bartsch did not have Herterich in mind as his child at that time. To meet that burden

23   Herterich relied on Bartsch's inaccurate but unambiguous declaration in the Will that

24   Bartsch had had no children. In other pretermission cases, involving similar inaccurate

25   declarations in a will that the testator had no children, courts drew the inference from

26   those declarations that the testator did not have his child in mind when executing his will.

27   But here the state courts did not draw such an inference from such a declaration. Here, the

28   state courts ruled on summary judgment that the inference cannot be drawn, from

Bartsch's declaration in the Will that he had had no children, that Bartsch did not have Herterich in mind as his child when the Will was executed.

17.     Herterich contends that, by failing to draw an inference that always had been drawn in other cases with similar facts, Defendants treated Herterich differently from similarly situated persons, to Herterich's detriment.

18.     But the discriminatory treatment did not end there. There were several additional ways in which Defendants, in denying Herterich's pretermission claim, treated Herterich differently from similarly situated persons, to Herterich's detriment:

- Defendants concluded that Bartsch's declaration in the Will, that he had had no children, showed an intent to disinherit Herterich. In other pretermission cases the courts did not draw such a conclusion from such a declaration.

- Defendants relied on evidence extrinsic to the Will to establish that Bartsch intended to disinherit Herterich. In other pretermission cases evidence extrinsic to a will was inadmissible to establish an intent to disinherit.

- Defendants used evidence extrinsic to the Will without first identifying an ambiguity or mistake in the Will, and Defendants used that evidence for purposes other than resolving an ambiguity or correcting a mistake in the Will. In other probate cases evidence extrinsic to a will was inadmissible unless the court first identified an ambiguity or a mistake in the will and the evidence was used to resolve the ambiguity or correct the mistake.

- Defendants prevented Herterich from pursuing his pretermission claim on the grounds that (1) Bartsch had been aware that Herterich was his child many years or decades prior to executing the Will; (2) Bartsch had provided or was legally obligated to provide financial support for Herterich many decades prior to executing the Will; (3) Herterich produced no evidence to indicate that Bartsch was suffering from a lack of memory or other disability or incapacity at the time he executed the Will; (4) Herterich did not rebut the presumption that Bartsch had testamentary capacity when he executed the Will; and (5) Herterich

7

did not offer evidence, such as evidence suggesting that Bartsch suffered from an age-related cognitive impairment when he executed the Will, to show that Bartsch had lost all awareness of Herterich as Bartsch's child. In other pretermission cases the pretermission claimant was not prevented from pursuing his or her claim notwithstanding that (1) at some time prior to executing the will the testator had been aware that the claimant was the testator's child; (2) at some time prior to executing the will the testator had provided or was legally obligated to provide financial support for the claimant; (3) the claimant produced no evidence to indicate that the testator was suffering from a lack of memory or other disability or incapacity at the time he executed the will; (4) the claimant did not rebut the presumption that the testator had testamentary capacity when he executed the will; and (5) the claimant did not offer evidence, such as evidence suggesting that the testator suffered from an age-related cognitive impairment when he executed the will, to show that the testator had lost all awareness of the claimant as the testator's child.

- Defendants did not limit the inquiry in the Pretermission Proceeding to the issue of whether Bartsch had Herterich in mind when the Will was executed. In other pretermission cases the courts limited the inquiry to the issue of whether the testator had the pretermission claimant in mind when the will was executed.

- Defendants relied on an unauthenticated document. In other cases an unauthenticated document was inadmissible as such, as irrelevant, or as hearsay.

- Defendants decided Herterich's pretermission claim against him on summary judgment on the basis of purported facts that were unsupported by evidence in the record. In other cases the plaintiffs did not have their cases decided against them on summary judgment on the basis of purported facts that were unsupported by evidence in the record.

**COMPLAINT**

1    19.    Based on these facts, Herterich here contends that Defendants violated his

2   rights under the U.S. Constitution by discriminating against him and denying him the

3   equal protection of the laws. Alternatively, Herterich contends that Defendants denied him

4   the due process of the laws, unreasonably seized his property interest in Bartsch's estate,

5   or took his property interest in Bartsch's estate for public use without just compensation.

6   Herterich seeks recovery of his property interest in Bartsch's estate, just compensation for

7   that property interest, or money damages.

8

9                              **COMMON ALLEGATIONS**

10   **A.    Herterich filed the Pretermission Petition because he was Bartsch's child**

11          **whom Bartsch did not have in mind when the Will was executed.**

12          a.      **Herterich was Bartsch's child and only heir.**

13    20.    On February 6, 1963, the Superior Court entered an order and judgment

14   (collectively, "the Paternity Order") in case no. 508058 ("the Paternity Proceeding"). The

15   Paternity Order determined that Bartsch was Herterich's father and ordered Bartsch to pay

16   child support for Herterich to Herterich's mother while Herterich was resident in

17   California and until Herterich reached majority or became emancipated.

18    21.    Bartsch died in San Francisco, California, on October 25, 2008.

19    22.    Under California law, Herterich was Bartsch's "child" when Bartsch died.

20   See California Probate Code §§ 6450(a) and 6453(b)(1).

21    23.    Bartsch had had no children other than Herterich. Bartsch had never

22   married. When Bartsch died all of his property was separate property and none of his

23   property was held in trust.

24    24.    Under California law, Herterich was Bartsch's sole heir when Bartsch died.

25   See California Probate Code § 44.

26    25.    Under California law, Herterich was entitled after Bartsch's death to inherit

27   the entire residue of Bartsch's estate unless a will providing otherwise was determined by

28   a court to be valid. See California Probate Code § 6402(a). The residue of Bartsch's estate

consisted of the remainder after Bartsch's debts were paid from the assets Bartsch owned when he died.

**b.      In the Will Bartsch did not mention Herterich, and Bartsch instead declared that he had had no children.**

26.     On November 17, 2008, Arndt Peltner ("Peltner"), through his attorney Alice Brown Traeg ("Traeg"), filed a petition ("the Probate Petition") in the Superior Court to administer Bartsch's estate and probate the Will, thereby initiating the Probate Proceedings (more specifically, case no. PES-08-291846). The Probate Petition was granted on December 10, 2008, by written order ("the Probate Order").

27.     The Will had been drafted and transcribed by Peltner and then prepared for execution by Traeg.

28.     The Will purported to have been executed on January 18, 2007.

29.     The Will was "signed" using a rubber stamp which impressed a facsimile of Bartsch's signature onto the Will.

30.     The Will provided that the entire residue of Bartsch's estate would be distributed to persons other than Herterich. The largest bequest in the Will was to Peltner.

31.     The Will did not mention Herterich.

32.     The Will explicitly declared that Bartsch had had no children.

**c.      There was no indication that Bartsch had Herterich in mind when Bartsch executed the Will.**

33.     In the Probate Petition, Peltner and Traeg explicitly stated under penalty of perjury that Bartsch was survived by no child.

34.     Herterich was not mentioned in the Probate Petition.

35.     In the Probate Petition, Peltner and Traeg explicitly stated under oath that Ute Hellauer was one of Bartsch's heirs.

36.     Ute Hellauer was a niece of Bartsch—i.e., not a spouse or child of Bartsch.

1      37.    Ute Hellauer was not an heir of Bartsch.

2      38.    Ute Hellauer would have been an heir of Bartsch if Bartsch had had no

3   children when he died.

4      39.    Herterich was not served personal notice of the Probate Petition.

5      40.    Herterich did not learn of the Probate Petition, the Probate Proceedings, or

6   the Will until after the Probate Petition had been granted and the Will had been admitted

7   to probate.

8      41.    After Herterich learned of the Probate Petition, the Probate Proceedings, and

9   the Will, he had his attorneys reach out to the persons named in the Probate Petition.

10   Those who responded all told Herterich's attorneys that they had never heard of Herterich

11   and did not know that Bartsch had a child, and that Bartsch had never indicated to them

12   that he had a child.

13

14      d.    **Herterich filed the Pretermission Petition so that he could receive a**

15            **statutory share of Bartsch's assets notwithstanding the Will.**

16      42.    Based on these facts, Herterich filed a petition ("the Pretermission Petition")

17   in the Probate Proceedings on April 1, 2009. In the Pretermission Petition Herterich

18   alleged that he was Bartsch's pretermitted or omitted child and as such entitled to

19   distribution of the entire residue of Bartsch's estate, notwithstanding that the dispositive

20   provisions of the Will purported to distribute that residue to others.

21      43.    Herterich filed the Pretermission Petition under California Probate Code §

22   21622, which in pertinent part provided and still provides that a decedent's child "shall

23   receive a share in the estate equal in value to that which the child would have received if

24   the decedent had died without having executed any testamentary instruments" if the court

25   concludes that "at the time of the execution of all of decedent's testamentary instruments

26   effective at the time of decedent's death, the decedent … was unaware of the birth of the

27   child."

28

44.     Within the meaning of California Probate Code § 21622, "the birth of the child" is a legal term of art. The "birth of a child" is an "event so momentous" and "so deserving of consideration in framing a testamentary scheme" that the Legislature has enacted the pretermission statute "to secure a specific moral influence upon the testamentary act -- the moral influence of having [that event] in mind" when the testamentary scheme is framed. *Estate of Turkington* (1983) 147 Cal.App.3d 590, 593-594; *Estate of Meyer* (1919) 44 Cal.App. 289, 292-293. At common law, upon the birth of a child "there is such a radical change in the testator's situation that the law should regard the will as revoked regardless of the wishes of the individual testator." Atkinson, *Handbook of the Law of Wills* (1953) § 85, at p. 428-429; 88 A.L.R.2d 616 § 2 (at common law, "birth of a child" can cause "the revocation of a will … in consequence of a rule or principle of law, independently altogether of the testator's intention.").

45.     "Pretermitted heir statutes, or 'pretermission' statutes, … supersede the operation of an otherwise valid will to provide a statutory share in a decedent's estate for certain heirs of the testator or testatrix who are neither beneficiaries of such will, nor otherwise mentioned or provided for therein." 83 A.L.R.4th 779 § 2[a]. Pretermitted child statutes "reverse the general rule that a testator is presumed to know the contents of his will and to intend that effect shall be given thereto." Page on Wills § 21.105.

46.     The California courts have interchangeably stated that the inquiry in a pretermitted child proceeding concerns whether the testator (1) "had [his] child in mind at the time of executing the will" (*Estate of Torregano* (1960) 54 Cal.2d 234, 249) or (2) "was unaware" of the child when the will was executed (*Id.*, 254).

47.     In the Pretermission Petition Herterich alleged that when the Will was executed Bartsch either did not believe or had forgotten that Herterich was his child, and Bartsch therefore was unaware of the birth of the child within the meaning of California Probate Code § 21622, but Bartsch would have provided for his child in the Will if he had believed he had a living child when the Will was executed.

e. **After Herterich filed the Pretermission Petition, further discovery confirmed that Bartsch did not have Herterich in mind when Bartsch executed the Will.**

48.    After filing the Pretermission Petition Herterich propounded discovery and deposed Peltner and Traeg.

49.    After discovering the names and contact information of Bartsch's friends and relatives, Herterich through his attorneys reached out to Bartsch's friends and relatives. Those who responded all told Herterich's attorneys that they had never heard of Herterich and did not know that Bartsch had a child, and that Bartsch had never indicated to them that he had a child or that he would not provide for a child if he had one.

50.    In discovery Herterich obtained an audio recording wherein Bartsch told Peltner in German that all of his relatives were in Germany. In that audio recording Bartsch explained that he was generous with his money, paid his relatives' expenses when they visited from Germany, and was careful to leave something in his will for his relatives, as well as for his caretakers. To emphasize his generosity Bartsch told a story about how he was once travelling in Poland and still had a substantial quantity of Polish money as he was about to leave the country by land, so right before leaving Poland he gave the Polish money away to complete strangers who happened to be passengers on a train he was on.

51.    In discovery Herterich obtained Bartsch's financial records, which indicated that over the years he had made generous gifts to his friends, relatives, and caretakers, and had paid their expenses when his friends and relatives visited him.

52.    Peltner testified that he was Bartsch's fiduciary and Bartsch had given him power of attorney and appointed him executor, and Peltner had had long personal conversations with Bartsch on numerous occasions when he visited Bartsch, helped Bartsch, or brought Bartsch to the doctor, but Peltner did not know of Herterich or the fact that Bartsch had a child until after the Pretermission Petition had been filed.

**COMPLAINT**

53.     Peltner testified that Bartsch never indicated to him that Bartsch had a child, not even when Peltner transcribed and participated in the drafting of the Will.

54.     Traeg testified that she had prepared the final version of the Will and witnessed its execution in 2007, and that at that time Bartsch did not mention Herterich or indicate that Bartsch had had a child.

55.     Traeg testified that when preparing a prior will for Bartsch in 1999 or 2000 she became aware that Bartsch had at some point in the past made payments to Herterich's mother, and when she asked Bartsch about those payments Bartsch told her that the payments had not been made under court order and Herterich was not his child.

56.     Traeg testified that she believed Bartsch and concluded that Herterich was not Bartsch's child, and for that reason did not include any mention of Herterich in any of the wills which she subsequently drafted or prepared for Bartsch.

57.     Traeg testified that in his wills Bartsch usually named as beneficiaries the friends with whom he had recently been in contact, and all of his relatives except for those with whom he had had a falling out.

58.     Peltner and Traeg both testified that, prior to the filing of the Pretermission Petition, they did not know that a court had determined that Bartsch was Herterich's father. Peltner and Traeg both denied knowledge prior to the filing of the Pretermission Petition of any child support payments which Bartsch may have made under court order.

59.     Prior to August 8, 2011, Herterich had ample evidence indicating that when Bartsch executed the Will Bartsch did not have Herterich in mind as his child and Bartsch was unaware that Herterich was his child.

60.     Prior to August 8, 2011, Herterich had no evidence indicating that when Bartsch executed the Will Bartsch had Herterich in mind as his child or was aware that Herterich was his child.

**B.     The MSJ sought to defeat the Pretermission Petition by conclusively establishing that in 2007 Bartsch was aware that Herterich was his child.**

     a.     **The MSJ relied on extrinsic evidence without claiming there was an ambiguity or a mistake in the Will.**

61.     On August 8, 2011, Peltner filed a motion for summary judgment ("the MSJ") in the Pretermission Proceeding.

62.     In the MSJ Peltner did not dispute that Herterich was Bartsch's child within the meaning of the California Probate Code. To the contrary, Peltner stipulated through counsel that Bartsch's declaration in the Will that Bartsch had had no children was "legally incorrect."

63.     In the MSJ Peltner did not take the position that Bartsch's declaration in the Will, that Bartsch had had no children, was ambiguous or the result of a mistake. To the contrary, Peltner argued that the declaration was intentional and had not been the result of a mistake.

64.     In the MSJ Peltner did not argue that evidence extrinsic to the Will was necessary to resolve an ambiguity or correct a mistake in the Will. Yet the MSJ nonetheless relied on evidence extrinsic to the Will, as set forth below. That evidence was submitted for the purpose of showing that when Bartsch executed the Will he was aware that Herterich was his child, notwithstanding that such a showing would conflict with the inference that must be drawn from Bartsch's declaration in the Will that he had had no children. Most of the evidence was inadmissible or non-existent, as set forth below.

     b.     **The MSJ stated without evidence that Bartsch had paid child support for Herterich until Herterich turned 21 in 1982.**

65.     In the MSJ Peltner stated that Bartsch had paid child support for Herterich until Herterich turned 21 in 1982. In support of that statement Peltner cited only to the Paternity Proceeding, generally and *in toto*. However, nothing in the Paternity Proceeding indicates that Bartsch paid child support for Herterich until Herterich turned 21, and

1  Peltner produced no evidence from the Paternity Proceeding indicating that such

2  payments had ever been made. The Paternity Order is the only document from the

3  Paternity Proceeding which is in the record of the Pretermission Proceeding.

4

5       c.    **The MSJ relied in part on the 1963 Paternity Order.**

6       66.    The MSJ relied in part on the Paternity Order. Peltner asserted that as a

7  matter of law the 1963 Paternity Order conclusively established that Bartsch was aware

8  that Herterich was Bartsch's child when the Will was executed in 2007.

9       67.    The Paternity Order did not indicate, and Peltner did not claim that the

10  Paternity Order indicated, that Bartsch had paid child support for Herterich.

11

12       d.    **The MSJ relied in part on the unauthenticated Seelander Document,**

13              **which purported to date from the 1990s.**

14       68.    The MSJ also relied in part on a document ("the Seelander Document")

15  which, Peltner asserted, was a testamentary instrument that Bartsch had executed in 1993

16  and then sent to Ursula Seelander, an attorney in Germany. The Seelander Document was

17  a type-written one-page document which was styled as a testamentary instrument,

18  "signed" using a rubber-stamp facsimile of Bartsch's signature, and not signed by any

19  witness to its purported execution. The Seelander Document bore several dates from the

20  1990s. The only hand-written text in the Seelander Document were the words "Ursula

21  Seelander 1/10/96."

22       69.    The Seelander Document was not, and could not have been, a testamentary

23  instrument. The Seelander Document did not satisfy the technical requirements under

24  California law of a testamentary instrument.

25       70.    In the Seelander Document Bartsch purportedly stated that (1) he wished

26  that Herterich take no part of his estate; (2) he never considered Herterich to be his "child

27  or father"; and (3) he had made payments for Herterich to Herterich's mother for 21 years

28  "under constant pre/ssure and threaths [sic]."

71.     In the MSJ Peltner claimed that the Seelander Document showed that in 1993 Bartsch intended to eliminate Herterich as a beneficiary of his estate.

72.     In the MSJ Peltner did <u>not</u> claim that the Seelander Document showed that Bartsch had made court-ordered child-support payments for Herterich for 21 years. To the contrary, Peltner asserted elsewhere that the Seelander Document could not be construed to imply that Bartsch had made or been compelled to make child-support payments for Herterich under court order. Similarly, Traeg testified elsewhere that she did not construe the Seelander Document as implying that Bartsch had made or been compelled to make child-support payments for Herterich under court order.[1]

73.     In the MSJ Peltner did not attempt to authenticate the Seelander Document or support his assertions about it with evidence. Peltner instead only claimed that Bartsch had given Traeg a copy of the Seelander Document, and in support of that claim Peltner cited a short passage from Traeg's deposition testimony. However, Traeg did <u>not</u> testify that the Seelander Document was a testamentary instrument or that the Seelander Document had been executed in 1993. Similarly, Traeg did <u>not</u> testify that Bartsch understood the Seelander Document to be a testamentary instrument, had executed the Seelander Document, or had sent the Seelander Document to Ursula Seelander in Germany.

74.     In the Traeg deposition testimony cited by Peltner in the MSJ, Traeg explained that she had played no role in preparing the Seelander Document and that her copy of the Seelander Document had already been signed and the hand-written text was already present on her copy when she received the copy. Traeg did not otherwise provide

---

[1] Both Peltner and Traeg have asserted that their failure to serve Herterich notice of the Probate Petition was not fraudulent, and their representation under oath to the probate court that Bartsch was survived by no child was not perjurious, because the Seelander Document (which was in their possession at the time) could not be construed to imply that Herterich was Bartsch's child.

1   any information regarding the origin and subsequent history of the Seelander Document.

2   The deposition testimony cited by Peltner contained no indication that Bartsch had made

3   any representation to Traeg regarding the Seelander Document.

4        75.    In the Traeg deposition testimony cited by Peltner in the MSJ, Traeg

5   explained that her copy of the Seelander Document was in an envelope that Bartsch

6   brought with him when he met with Traeg in 1999, and she could not remember

7   specifically why Bartsch gave her that envelope. In the cited testimony there is no

8   indication that Bartsch was aware that the copy of the Seelander Document was in that

9   envelope. To the contrary, Traeg testified elsewhere that Bartsch was blind and had to

10   have documents read to him out loud, so Bartsch could have been unaware of the contents

11   of the envelope which Traeg received from him. Traeg's testimony gave no indication that

12   Bartsch ever acknowledged the existence or purpose of the Seelander Document.

13

14        e.    **The MSJ relied in part on deposition testimony which did not support**

15             **Peltner's assertion that in 2007 Traeg and Bartsch had a conversation**

16             **in which they specifically referred to Herterich as Bartsch's child and**

17             **heir whom Bartsch wanted to disinherit.**

18        76.    The MSJ also relied in part on passages from the deposition testimony of

19   Peltner and Traeg which, Peltner asserted, established that on the day the Will was

20   executed Traeg and Bartsch had a conversation in which they specifically referred to

21   Herterich as Bartsch's child and heir whom Bartsch wanted to disinherit. But the

22   deposition testimony cited by Peltner did not support Peltner's assertion. To the contrary,

23   the cited passage in Traeg's testimony concerned a conversation between Traeg and

24   Bartsch which took place seven years prior to the execution of the Will and in which

25   Bartsch asserted and Traeg concluded that Herterich was <u>not</u> Bartsch's child. The passage

26   did not concern events surrounding the execution of the Will and did not indicate that

27   either Traeg or Bartsch had represented that Herterich <u>was</u> Bartsch's child or heir.

28

1        77.    In the Peltner deposition testimony passages cited in the MSJ Peltner

2   testified that in his presence Bartsch confirmed that he had had no children and there was

3   no further discussion of the matter. Peltner did not testify that Herterich was mentioned or

4   that a child of Bartsch was mentioned. Peltner testified elsewhere that he had been present

5   when the Will was executed and at several earlier meetings at which the Will was

6   discussed, and that neither Herterich nor the fact that Bartsch had a child were mentioned

7   at any of those meetings. Peltner testified that he did not hear of Herterich or the fact that

8   Bartsch had a child until long after Bartsch had died.

9        78.    The deposition testimony cited by Peltner in the MSJ did not indicate, and

10   Peltner did not claim that it showed, that Bartsch had paid child support for Herterich.

11

12   **C.     Herterich objected to the extrinsic evidence on which the MSJ relied.**

13       79.    Herterich objected to the extrinsic evidence which Peltner offered in support

14   of the MSJ. Herterich argued that Bartsch's declaration in the Will, that Bartsch had had

15   no children, was an unambiguous declaration by Bartsch that he was unaware of any child

16   that he may have had, so under California law evidence extrinsic to the Will was not

17   admissible for the purpose of showing that when Bartsch executed the Will he was

18   nonetheless aware that Herterich was his child.

19       80.    Herterich objected to Peltner's reliance on the Paternity Order, the Seelander

20   Document, and the deposition testimony of Peltner and Traeg, on the grounds that (1) all

21   of that evidence was irrelevant because it did not show that in 2007 (i.e., when the Will

22   was executed) Bartsch was aware that Herterich was Bartsch's child; (2) the Seelander

23   Document had not been authenticated; and (3) most of Peltner's evidence was

24   inadmissible hearsay.

25       81.    Herterich objected that no evidence supported Peltner's assertion that

26   Bartsch had paid child support for Herterich until Herterich turned 21. Herterich argued

27   that, even if the payments had been made, they would have ended in 1982 at the latest and

28

1   were thus irrelevant because they did not show that in 2007 (i.e., when the Will was

2   executed) Bartsch was aware that Herterich was Bartsch's child.

3        82.    Herterich disputed that the deposition testimony of Peltner and Traeg

4   established that on the day the Will was executed Traeg and Bartsch specifically referred

5   to Herterich as Bartsch's child and heir whom Bartsch wanted to disinherit. Herterich

6   contended there was no evidence of such a discussion.

7        83.    Herterich argued that, assuming *arguendo* that the Seelander Document

8   were admissible as evidence, it undermined the MSJ because in it Bartsch stated that

9   Herterich was not his child.

10

11  **D.    Relying on extrinsic evidence, Wiss granted the MSJ.**

12       84.    The MSJ was heard and decided by Wiss.

13       85.    On December 30, 2011, Wiss granted the MSJ, thereby denying the

14  Pretermission Petition, in a written order ("the Pretermission Order") after concluding in

15  the Pretermission Order that Herterich was not a pretermitted child within the meaning of

16  California Probate Code § 21622.

17       86.    In the Pretermission Order Wiss ruled that Herterich was Bartsch's child.

18       87.    In the Pretermission Order Wiss did <u>not</u> identify an ambiguity or mistake in

19  the Will. And Wiss did not rule that evidence extrinsic to the Will was necessary to

20  resolve an ambiguity or correct a mistake in the Will. Yet Wiss nonetheless ruled that

21  evidence extrinsic to the Will was admissible to establish that (1) when the Will was

22  executed Bartsch was aware of Herterich's birth as his child; and (2) Bartsch had

23  complied with the court order to pay child support for Herterich and was aware of that

24  compliance when he executed the Will.

25       88.    In the Pretermission Order Wiss overruled all of Herterich's evidentiary

26  objections concerning the Paternity Order, the Seelander Document, and the deposition

27  testimony of Peltner and Traeg. Wiss ruled that, because the evidence showed that Bartsch

28  was once aware that Herterich was his child, Herterich needed to produce evidence to

1   indicate that Bartsch was suffering from a lack of memory or other disability or incapacity

2   at the time he executed the Will in 2007. Wiss ruled that Herterich needed to rebut the

3   presumption that Bartsch had testamentary capacity when he executed the Will in 2007.

4   Consequently, the evidence was relevant.

5       89.   In the Pretermission Order Wiss did not explain why she had overruled

6   Herterich's objection that the Seelander Document had not been properly authenticated.

7       90.   In the Pretermission Order Wiss did not explain why she had overruled

8   Herterich's objection that most of Peltner's evidence was hearsay.

9       91.   In the Pretermission Order Wiss ruled that as a matter of law the 1963

10  Paternity Order by itself defeated Herterich's pretermission claim because, as a result of

11  the Paternity Order, Bartsch could not have been unaware of the birth of the child within

12  the meaning of California Probate Code § 21622.

13      92.   In the Pretermission Order Wiss ruled that as a matter of law no inference

14  could be drawn, from Bartsch's declaration in the Will that he had had no children, that

15  when the Will was executed Bartsch was unaware that Herterich was his child.

16      93.   In the Pretermission Order Wiss ruled that Herterich failed to produce

17  evidence to show that Bartsch was unaware of Herterich's birth within the meaning of

18  California Probate Code § 21622. Wiss ruled that Herterich failed to produce evidence,

19  which he was required to produce, to indicate that Bartsch was suffering from a lack of

20  memory or other disability or incapacity at the time he executed the Will in 2007. Wiss

21  ruled that Herterich failed to rebut the presumption that Bartsch had testamentary capacity

22  when he executed the Will in 2007.

23      94.   In the Pretermission Order Wiss ruled that Bartsch had paid court-ordered

24  child support for Herterich for 21 years. Wiss explained that this ruling relied on the

25  Seelander Document.

26      95.   In the Pretermission Order Wiss ruled that at the time the Will was executed

27  in 2007 Bartsch was aware that (1) the court had entered judgment finding that he was the

28  father of Herterich, and (2) he had paid child support for 21 years. Wiss explained that

1    these rulings were grounded on the Seelander Document and Traeg's deposition

2    testimony, as well as Wiss's conclusion that the Seelander Document consisted of

3    statements that had been made by Bartsch.

4           96.    In reliance on the Pretermission Order, Wiss entered judgment against

5    Herterich on the Pretermission Petition on February 15, 2012, and entered an amended

6    judgment against Herterich on the Pretermission Petition on March 22, 2012.

7

8    **E.**      **Relying on extrinsic evidence, the Appellate Justices affirmed Wiss's**

9             **Pretermission Order in *Bartsch II*.**

10          97.    Herterich timely appealed the Pretermission Order and its resulting

11    judgment. The appeal was heard and decided by the Appellate Justices in case no.

12    A135322 of the Appellate Court.

13          98.    On appeal Herterich argued that (1) Bartsch's declaration in the Will that he

14    had had no children unambiguously indicated that he was unaware that Herterich was his

15    child at the time the declaration was made; (2) because the declaration was unambiguous,

16    extrinsic evidence was inadmissible to support the conclusion that, to the contrary,

17    Bartsch was aware that Herterich was his child when the Will was executed; and (3) if

18    extrinsic evidence was admissible then summary judgment in Peltner's favor was

19    nonetheless unwarranted because Bartsch's declaration in the Will and to Traeg that he

20    had had no children created a triable issue of fact as to whether at that time Bartsch was

21    aware that Herterich was Bartsch's child.

22          99.    On appeal Herterich also argued that (1) the Seelander Document could not

23    be used as evidence because it was hearsay and had not been authenticated by a competent

24    witness with personal knowledge of its origin; (2) the Paternity Order and the Seelander

25    Document were made, and the deposition testimony of Traeg pertained to events which

26    occurred, many years or decades before the Will was executed and thus could not

27    conclusively establish that Bartsch was aware of Herterich as his child when the Will was

28    executed; (3) Traeg's testimony indicated that in 2000 Bartsch believed that Herterich was

1  not his child; and (4) Peltner's testimony could not and did not establish that in 2007

2  Bartsch was aware that Herterich was his child.

3    100.  On January 30, 2014, the Appellate Justices filed an unpublished opinion

4  ("*Bartsch II*") affirming the Pretermission Order and its resulting judgment.

5    101.  In *Bartsch II*, the Appellate Justices ruled that (1) Bartsch's declarations in

6  the Will and to Traeg, that he had had no children, did not support an inference that when

7  the declarations were made Bartsch was unaware that Herterich was his child; (2)

8  Bartsch's declaration in the Will, that he had had no children, can be interpreted to

9  express an intent to disinherit Herterich; (3) extrinsic evidence was admissible to establish

10 that when the Will was executed Bartsch was aware that Herterich was Bartsch's child;

11 (4) Peltner presented extrinsic evidence that persuasively demonstrated that when the Will

12 was executed Bartsch was aware that Herterich was Bartsch's child; (5) Bartsch paid

13 monthly child support until 1982, when Herterich turned 21 years of age, after making

14 approximately 228 monthly child support payments; (6) as a result of making those child

15 support payments, Bartsch understood that Herterich was his child in the eyes of the law;

16 (7) Herterich was required to show that Bartsch subsequently lost all awareness of

17 Herterich as Bartsch's child; and (8) Herterich did not offer evidence, such as evidence

18 suggesting that Bartsch suffered from an age-related cognitive impairment when he

19 executed the Will, to show that Bartsch lost all awareness of Herterich as Bartsch's child.

20   102.  In *Bartsch II*, the Appellate Justices stated generally and without further

21 elaboration that they found no abuse of discretion in Wiss's evidentiary rulings. The

22 Appellate Justices did not mention Herterich's evidentiary objections that Peltner's

23 evidence was irrelevant, unauthenticated, and/or hearsay. The Appellate Justices did not

24 explain why Wiss had not abused her discretion when overruling those objections.

25   103.  As an unpublished opinion, *Bartsch II* may only be cited when relevant

26 under the doctrines of law of the case, res judicata, or collateral estoppel. *See* California

27 Rules of Court, Rule 8.1115(b)(1); Northern District of California, Civil Local Rule 3-

28 4(e). None of those doctrines are applicable to the claims raised herein.

1      104.    Herterich timely petitioned for rehearing of *Bartsch II*, arguing that (1) there

2  was no evidence in the record that Bartsch had made child support payments for Herterich

3  for 21 years; (2) as a legal matter it does not follow, from the fact that at a time in the

4  distant past Bartsch was aware that Herterich was his son, that Bartsch must have been

5  aware of the birth of his son at the time of the making of the Will; and (3) it was error to

6  conclude that the inference that Bartsch was unaware of the birth of his child cannot be

7  drawn from Bartsch's declaration in the Will that he had had no children.

8      105.    On February 28, 2014, the Appellate Justices denied the petition for

9  rehearing without explanation.

10

11 **F.      The Supreme Court Justices declined to review *Bartsch II*.**

12      106.    On March 12, 2014, Herterich timely petitioned the California Supreme

13 Court for review of *Bartsch II* in California Supreme Court case no. S216699. Herterich

14 argued that review should be granted because under then-existing California probate law

15 evidence extrinsic to a will was only admissible for the purpose of resolving an ambiguity

16 in the will, yet *Bartsch II* allowed such evidence to be admitted where there was no

17 ambiguity in the Will and, indeed, the evidence conflicted with Bartsch's unambiguous

18 declaration in the Will that he was unaware of any children that he had had. Herterich also

19 argued that review should be granted because in prior cases pretermission claimants had

20 prevailed even though the testator had been aware of the child at some earlier time, but

21 *Bartsch II* barred Herterich from pursuing his pretermission claim because of Bartsch's

22 purported awareness of Herterich as Bartsch's child many years or decades prior to the

23 execution of the Will.

24      107.    On April 23, 2014, the Supreme Court denied the petition for review

25 without explanation. Remittitur issued on the Pretermission Petition on April 24, 2014.

26 All of the Supreme Court Justices other than Cuéllar participated in the decision to deny

27 the petition for review.

28

**COMPLAINT**

**G.     After the Pretermission Petition was finally determined Peltner and Traeg, under oath in the Civil Fraud Action, contradicted their earlier material assertions in the Pretermission Proceeding that on the day the Will was executed Traeg and Bartsch referred to Herterich as Bartsch's child and heir whom Bartsch wanted to disinherit.**

108.    After the Pretermission Petition had been finally determined Herterich propounded written discovery to Peltner and Traeg, and Herterich took the depositions of Peltner and Traeg, in a state court civil fraud action, specifically San Francisco Superior Court case no. CGC-12-523942 ("the Civil Fraud Action"). The Civil Fraud Action was related to but separate and distinct from the Probate Proceedings.

109.    In their deposition testimony and interrogatory responses provided in the Civil Fraud Action, Peltner and Traeg under oath made representations that conflicted with the claims which Peltner and Traeg had previously made in the Pretermission Proceeding and on which the state courts had relied when granting and affirming the granting of the MSJ. More specifically, Peltner and Traeg represented under oath in the Civil Fraud Action that at no time on or around the day the Will was executed did Traeg or Bartsch refer to Herterich as Bartsch's child or heir or as a person whom Bartsch wanted to disinherit.

110.    To the contrary, Peltner and Traeg represented under oath in the Civil Fraud Action that (1) Herterich was not mentioned at or around the time the Will was executed; (2) Bartsch never in any way informed Peltner or Traeg that Bartsch had had a child; (3) Bartsch had previously told Traeg that he had no children and Traeg thereafter believed that Bartsch did not have a child; and (4) neither Peltner nor Traeg knew that Bartsch had a child prior to 2009 when Herterich filed the Pretermission Petition. Peltner and Traeg made these representations in (1) Peltner's verified responses in the Civil Fraud Action, dated April 23, 2015, to Herterich's Special Interrogatories, Set 1; (2) Traeg's verified responses in the Civil Fraud Action, dated October 3, 2015, to Herterich's Special Interrogatories, Set 1; (3) the deposition testimony of Peltner, taken in the Civil Fraud

1   Action on October 19, 2015; and (4) the deposition testimony of Traeg, taken in the Civil

2   Fraud Action on October 23, 2015. Similar but unsworn representations were made in (1)

3   the memorandum filed by Peltner in the Civil Fraud Action on September 8, 2015; (2) the

4   separate statement filed by Peltner in the Civil Fraud Action on September 8, 2015; and

5   (3) the brief filed by Peltner in the Civil Fraud Action on November 19, 2015.

6

7   **H.      In *Duke* the Supreme Court retrospectively held that an unambiguous will can**

8   **be reformed if specific requirements are met.**

9          111.    While the Pretermission Petition was pending and before the Appellate

10   Justices issued *Bartsch II*, the California Supreme Court on March 21, 2012, granted

11   review in California Supreme Court case no. S199435, the Estate of Duke ("case no.

12   S199435"). According to the California Supreme Court's website, case no. S199435

13   presented the following issue: "Should the 'four corners' rule (see *Estate of Barnes* (1965)

14   63 Cal.2d 580) be reconsidered in order to permit drafting errors in a will to be reformed

15   consistent with clear and convincing extrinsic evidence of the decedent's intent?"

16          112.    While case no. S199435 remained pending before the California Supreme

17   Court, the Appellate Justices issued *Bartsch II*, Herterich petitioned for review of *Bartsch

18   II*, and the Supreme Court Justices denied review of *Bartsch II*.

19          113.    After the Pretermission Petition had been finally determined, the California

20   Supreme Court on July 27, 2015, decided case no. S199435 by filing an opinion which

21   may be cited as *Estate of Duke* (2015) 61 Cal.4th 871 ("*Duke*"). All of the Supreme Court

22   Justices other than Baxter signed the opinion in *Duke*.

23          114.    In *Duke* the Supreme Court explained that it had granted review in order to

24   reconsider the historical rule that extrinsic evidence was inadmissible to reform an

25   unambiguous will, and that upon reconsidering that historical rule the Supreme Court had

26   concluded that the categorical bar on reformation of wills was not justified. The Supreme

27   Court held that an unambiguous will may be reformed if clear and convincing evidence

28   establishes that the will contains a mistake in the expression of the testator's intent at the

1   time the will was drafted and also establishes the testator's actual specific intent at the

2   time the will was drafted. See *Duke* at 875.

3      115.   *Duke* was a judicial decision and as such operated retrospectively. See

4   *United States v. Security Industrial Bank* (1982) 459 U.S. 70, 79. *Duke* applied to the

5   Pretermission Petition even though that petition had been finally determined when *Duke*

6   was decided.

7

8   **I.    Herterich unsuccessfully asked the state courts to bring the adjudications in**

9        **the Pretermission Proceeding into compliance with the retrospectively**

10       **effective requirements for reformation set forth in *Duke*.**

11      a.    **Wiss refused to reconsider the Pretermission Order *sua sponte*.**

12      116.   On November 9, 2015, Herterich sent a letter to the probate department of

13   the Superior Court, addressed to the Hon. Andrew Cheng, wherein Herterich informed the

14   Superior Court of the decision in *Duke* and urged the Superior Court—on its own motion

15   under California Code of Civil Procedure § 1008(c)—to reconsider the Pretermission

16   Order on the ground that its decision granting the MSJ was inconsistent with *Duke*.

17   Herterich explained that, under *Duke*, a court may consider extrinsic evidence, regarding a

18   decedent's declaration in his will that he has no children, only if (1) the declaration is

19   ambiguous and the evidence resolves the ambiguity, or (2) the evidence clearly and

20   convincingly establishes that the decedent intended to insert a different declaration into

21   the will. Herterich explained that, because Peltner had met neither of these requirements,

22   the Superior Court should reconsider its decision to grant the MSJ. Herterich explained

23   that the Superior Court found neither an ambiguity in Bartsch's declaration that he had

24   had no children, nor an intent by Bartsch to insert a different declaration into the Will, so

25   the Superior Court was not allowed to rely on extrinsic evidence either to construe or to

26   reform the Will to establish a state of mind contrary to Bartsch's clear expression in the

27   Will of his belief that he had no children, yet the Superior Court nonetheless admitted and

28

**COMPLAINT**

1   relied on extrinsic evidence when it found that Bartsch was aware he had a child when he

2   executed the Will.

3       117.   On November 30, 2015, Herterich received an unsigned communication

4   from the probate department of the Superior Court informing him that the Superior Court

5   was unable to give consideration to his request to reconsider the Pretermission Order

6   unless that request was in the form of a petition or objection which was set for hearing and

7   duly served on parties entitled to notice.

8       118.   On December 18, 2015, Herterich filed a petition for *sua sponte*

9   reconsideration by the Superior Court of its decision to grant the MSJ. The petition was

10   grounded on the fact that the MSJ and the Pretermission Order relied on extrinsic

11   evidence which was not admissible under the retrospectively applicable requirements set

12   forth in *Duke*. The petition also informed the Superior Court that in the Civil Fraud Action

13   Peltner and Traeg had effectively disavowed and retracted all of the extrinsic evidence

14   regarding Bartsch's state of mind when the Will was executed, on which the Superior

15   Court had relied when it granted the MSJ.

16       119.   In the petition Herterich explained that in the Civil Fraud Action Peltner and

17   Traeg had under oath contradicted the material factual representations which Peltner and

18   Traeg had made in the Pretermission Proceeding, and on which the Superior Court had

19   relied when granting the MSJ, that on the day the Will was executed Traeg and Bartsch

20   had a conversation in which they specifically referred to Herterich as Bartsch's child and

21   heir whom Bartsch wanted to disinherit. Herterich attached to the petition sworn

22   deposition testimony, verified interrogatory responses, and other papers from the Civil

23   Fraud Action wherein Peltner and Traeg denied that such a conversation had taken place.

24   Herterich also attached to the petition papers which Peltner and Traeg had filed in the

25   Pretermission Proceeding, and on which the Superior Court had relied when granting the

26   MSJ, wherein Peltner and Traeg claimed that such a conversation *had* taken place.

27       120.   On January 19, 2016, an employee of the Superior Court called Herterich's

28   counsel and left a voice mail message informing Herterich's counsel that the hearing date

**COMPLAINT**

1   for the petition for *sua sponte* reconsideration had been dropped and Herterich must re-file

2   his papers as a motion instead of as a petition.

3       121.   On January 21, 2016, Herterich re-filed, as a motion, his papers petitioning

4   for *sua sponte* reconsideration by the Superior Court of its decision to grant the MSJ.

5       122.   On March 4, 2016, Wiss made an order denying Herterich's motion for *sua*

6   *sponte* reconsideration by the Superior Court of its decision to grant the MSJ.

7

8       b.    **The Appellate Court refused to recall the remittitur in *Bartsch II*.**

9       123.   On April 25, 2016, Herterich moved the Appellate Court under California

10   Rules of Court, Rule 8.272(c)(2), to recall the remittitur and reinstate the appeal in case

11   no. A135322 on the grounds that (1) after the issuance of the remittitur, the California

12   Supreme Court in *Duke* provided new retrospectively effective authority and that *Bartsch*

13   *II* was incompatible with that new authority; and (2) during subsequent discovery in the

14   Civil Fraud Action, Peltner and Traeg made representations under oath that contradicted

15   the assertions which Peltner and Traeg had made in the Pretermission Proceeding and on

16   which the Appellate Court had relied when it issued *Bartsch II*. Herterich explained that

17   these circumstances mandated a rehearing of the appeal because the new law required a

18   different outcome of the appeal and because fraud had been perpetrated on the Appellate

19   Court.

20       124.   On April 27, 2016, the Appellate Court without further explanation denied

21   Herterich's motion, filed two days earlier, to recall the remittitur and reinstate the appeal

22   in case no. A135322.

23

24       c.    **The California Supreme Court denied Herterich's petition to review the**

25              **Appellate Court's refusal to recall the remittitur in *Bartsch II*.**

26       125.   On May 9, 2016, in California Supreme Court case no. S234369, Herterich

27   petitioned the California Supreme Court to review the Appellate Court's denial of

28   Herterich's motion to recall the remittitur and reinstate the appeal in Appellate Court case

1   no. A135322. Herterich explained that review should be granted because (1) *Bartsch II*

2   was not in accord with the retrospectively effective new law established in *Duke*; and (2)

3   *Bartsch II* was procured by fraud on the part of Peltner and Traeg. Herterich explained

4   that recalling the remittitur was necessary to secure uniformity of decision and because

5   the new law and new facts retroactively required a different outcome to the appeal.

6        126.   On June 22, 2016, the California Supreme Court without further explanation

7   denied Herterich's petition for review in California Supreme Court case no. S234369.

8   Corrigan was absent and did not participate.

9

10   **J.**    **After *Bartsch II* Herterich diligently exhausted state law remedies.**

11        127.   After the California Supreme Court denied Herterich's petition for review in

12   California Supreme Court case no. S234369, Herterich in the Civil Fraud Action

13   diligently continued to pursue state law remedies for the improper denial of the

14   Pretermission Petition. Herterich also in the Probate Proceedings diligently pursued

15   alternative state law remedies, which could at least potentially allow Herterich to inherit

16   Bartsch's assets without disturbing the denial of the Pretermission Petition.

17        128.   In the Civil Fraud Action Herterich was unable to remedy the improper

18   denial of the Pretermission Petition. Notwithstanding the evidence that when the Will was

19   executed Bartsch was unaware that Herterich was Bartsch's child, and notwithstanding the

20   absence of evidence to the contrary and the absence of evidence that Bartsch had made

21   child support payments pursuant to court order, a panel of the Appellate Court nonetheless

22   reiterated in the Civil Fraud Action that "substantial evidence supported the conclusion

23   that Bartsch was aware of [Herterich's] existence when he executed his will, particularly

24   because there was evidence that he had reluctantly made court-ordered child support

25   payments to plaintiff's mother for many years." *Herterich v. Peltner*, 20 Cal.App.5th

26   1132, 1136 (2018), *as modified on denial of reh'g* (Mar. 28, 2018). The Appellate Court

27   ruled in the Civil Fraud Action that, to the extent Peltner and Traeg had in the

28   Pretermission Proceeding made material representations which conflicted with those they

had made in the Civil Fraud Action or in procuring the Probate Order, Herterich's remedy was not to sue in tort but to mount a collateral attack to set aside the Probate Order on the grounds that the Probate Order had been procured by extrinsic fraud. *Id.*, 1146-1147.

129.  Herterich had already initiated a collateral attack to set aside the Probate Order when the Appellate Court ruled in *Herterich v. Peltner* that mounting such an attack was a remedy for the fact that Peltner and Traeg had in the Pretermission Proceeding made material representations which conflicted with those they had made in the Civil Fraud Action. But notwithstanding the Appellate Court ruling in *Herterich v. Peltner*, another panel of the Appellate Court subsequently ruled in case no. A151783 that Herterich did not have such a remedy. Remittitur issued in Appellate Court case no. A151783 on May 31, 2019.

130.  On July 18, 2019, remittitur issued in Appellate Court case nos. A155109, A155400, A156231, A156367, and A156317. Those cases all arose from and concerned Herterich's efforts to inherit Bartsch's assets in the Probate Proceedings without disturbing the denial of the Pretermission Petition. Upon the issuance of those remittiturs Herterich exhausted all known and available or potentially available state law remedies for the improper deprivation of his right to inherit Bartsch's assets.

131.  On June 21, 2019, in *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019), the United States Supreme Court overruled the state law exhaustion requirement explicated in *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985).

132.  The federal claims stated herein ripened on July 18, 2019, or alternatively on June 21, 2019, or on May 31, 2019.

**K.  Defendants knowingly and intentionally treated Herterich differently from similarly situated persons, to Herterich's detriment.**

133.  Defendants knowingly and intentionally treated Herterich differently from similarly situated persons, to Herterich's detriment, by refusing to draw the inference that

1  Bartsch was unaware that Herterich was his child, from Bartsch's declaration in the Will

2  that he had had no children. In other pretermission cases in which a testator had a child

3  when executing a will but nonetheless incorrectly stated in the will that he had no child

4  the court drew the inference that the testator was unaware of the child. See, e.g., *Estate of*

5  *Torregano* (1960) 54 Cal.2d 234, 251-252 ("The will must be interpreted as a whole,

6  giving effect to all of its clauses. While Torregano did not say in so many words that he

7  never had issue, the language of clause Second is meaningless unless it was intended to

8  convey the impression that Torregano was childless. To give it any effect whatsoever, we

9  must presume that testator thought he was without lineal issue.").

10  134.  Defendants knowingly and intentionally treated Herterich differently from

11  similarly situated persons, to Herterich's detriment, by concluding that Bartsch's

12  statement in the Will indicating that he had had no children showed an intent to disinherit

13  Herterich. In other pretermission cases in which a testator had a child when executing a

14  will but nonetheless incorrectly stated in the will that he had no child the court did not

15  conclude that the testator intended to disinherit the child. See, e.g., *Estate of Smith* (1973)

16  9 Cal.3d 74, 80 ("The statement in the will indicating that Dale had no children does not

17  show an intent to disinherit.").

18  135.  Defendants knowingly and intentionally treated Herterich differently from

19  similarly situated persons, to Herterich's detriment, by relying on evidence extrinsic to the

20  Will to establish that Bartsch intended to disinherit Herterich. In other pretermission cases

21  evidence extrinsic to a will was inadmissible to establish an intent to disinherit. See, e.g.,

22  *Estate of Smith* (1973) 9 Cal.3d 74, 80 ("an intent to disinherit…may not be established

23  by extrinsic evidence").

24  136.  Defendants knowingly and intentionally treated Herterich differently from

25  similarly situated persons, to Herterich's detriment, by using evidence extrinsic to the Will

26  without first identifying an ambiguity or mistake in the Will, and by using that evidence

27  for purposes other than resolving an ambiguity or correcting a mistake in the Will. In

28  other probate cases evidence extrinsic to a will was inadmissible unless the court first

1  identified an ambiguity or a mistake in the will and the evidence was used to resolve the

2  ambiguity or correct the mistake. See, e.g., *Estate of Barnes* (1965) 63 Cal.2d 580; *Estate*

3  *of Duke* (2015) 61 Cal.4th 871.

4      137.   Defendants knowingly and intentionally treated Herterich differently from

5  similarly situated persons, to Herterich's detriment, by preventing Herterich from

6  pursuing his pretermission claim on the grounds that (1) Bartsch had been aware that

7  Herterich was his child many years or decades prior to executing the Will; (2) Bartsch had

8  provided or was legally obligated to provide financial support for Herterich many decades

9  prior to executing the Will; (3) Herterich produced no evidence to indicate that Bartsch

10  was suffering from a lack of memory or other disability or incapacity at the time he

11  executed the Will; (4) Herterich did not rebut the presumption that Bartsch had

12  testamentary capacity when he executed the Will; and (5) Herterich did not offer

13  evidence, such as evidence suggesting that Bartsch suffered from an age-related cognitive

14  impairment when he executed the Will, to show that Bartsch lost all awareness of

15  Herterich as Bartsch's child. In other pretermission cases the pretermission claimant was

16  not prevented from pursuing his or her claim notwithstanding that (1) at some time prior

17  to executing the will the testator had been aware that the claimant was the testator's child;

18  (2) at some time prior to executing the will the testator had provided or was legally

19  obligated to provide financial support for the claimant; (3) the claimant produced no

20  evidence to indicate that the testator was suffering from a lack of memory or other

21  disability or incapacity at the time he executed the will; (4) the claimant did not rebut the

22  presumption that the testator had testamentary capacity when he executed the will; and (5)

23  the claimant did not offer evidence, such as evidence suggesting that the testator suffered

24  from an age-related cognitive impairment when he executed the will, to show that the

25  testator lost all awareness of the claimant as the testator's child. See, e.g., *Estate of*

26  *Turkington* (1983) 147 Cal.App.3d 590; *Estate of Smith* (1973) 9 Cal.3d 74; *Estate of*

27  *Kretschmer* (1965) 232 Cal.App.2d 789; *Estate of Falcone* (1962) 211 Cal.App.2d 40;

28  *Estate of Guerin* (1961) 194 Cal.App.2d 566; *Stevens v. Torregano* (1961) 192

1    Cal.App.2d 105; *Estate of Stickelbaut* (1960) 54 Cal.2d 390; *Estate of Torregano* (1960)

2    54 Cal.2d 234; *Estate of Percival* (1956) 138 Cal.App.2d 494; *Estate of Cochran* (1953)

3    116 Cal.App.2d 98; *Estate of Rawnsley* (1949) 94 Cal.App.2d 384; *Estate of Smith* (1948)

4    86 Cal.App.2d 456; *Estate of Lund* (1945) 26 Cal.2d 472; *Estate of Philippi* (1945) 71

5    Cal.App.2d 127; *Estate of Skinner* (1944) 65 Cal.App.2d 528; *Estate of Stahl* (1942) 54

6    Cal.App.2d 565; *Estate of Stahl* (1942) 54 Cal.App.2d 562; *Estate of Connors* (1942) 53

7    Cal.App.2d 484; *Estate of Klepsch* (1940) 36 Cal App 2d 483; *Estate of Conkey* (1939) 35

8    Cal.App.2d 581; *Estate of Grazzini* (1939) 31 Cal.App.2d 168; *Estate of Flood* (1933) 217

9    Cal. 763; *Estate of Lee* (1927) 200 Cal. 310; *Estate of Loyd* (1915) 170 Cal. 85; *Smith v.*

10   *Olmstead* (1891) 88 Cal. 582; *Estate of Stevens* (1890) 83 Cal. 322; *Estate of Grider*

11   (1889) 81 Cal. 571; *Estate of Wardell* (1881) 57 Cal. 484; *Pearson v. Pearson* (1873) 46

12   Cal. 609; *Bush v. Lindsey* (1872) 44 Cal. 121; *Estate of Garraud* (1868) 35 Cal. 336.

13        138.    Defendants knowingly and intentionally treated Herterich differently from

14   similarly situated persons, to Herterich's detriment, by not limiting the inquiry in the

15   Pretermission Proceeding to the issue of whether Bartsch had Herterich in mind when the

16   Will was executed. As to pretermission claimants other than Herterich the courts inquired

17   only whether the testator "had them in mind when the will was executed." See, e.g., *Estate*

18   *of Price* (1942) 56 Cal.App.2d 335, 338. The claims of pretermission claimants other than

19   Herterich failed only if the courts concluded that, when the will was executed, "the

20   testator had the omitted person in mind, and having him in his mind, has omitted him from

21   the provisions of the will." See, e.g., *Estate of Eggleston* (1954) 129 Cal.App.2d 601, 607.

22        139.    Defendants knowingly and intentionally treated Herterich differently from

23   similarly situated persons, to Herterich's detriment, by relying on the unauthenticated

24   Seelander Document. In other cases an unauthenticated document was inadmissible as

25   such, as irrelevant, or as hearsay. See, e.g., *People v. Seumanu* (2015) 61 Cal.4th 1293,

26   1318-1319; *People v. Melendez* (2016) 2 Cal.5th 1, 23; *McGarry v. Sax* (2008) 158

27   Cal.App.4th 983, 990-991; *Newport Harbor Offices & Marina, LLC v. Morris Cerullo*

28   *World Evangelism* (2018) 23 Cal.App.5th 28, 49-50; *Serri v. Santa Clara Univ.* (2014)

226 Cal. App. 4th 830, 854-855; *In re Cruse* (2003) 110 Cal.App.4th 1495, 1500;

California Evidence Code §§ 1400-1401 (authentication); 1200 (hearsay rule).

140.   Defendants knowingly and intentionally treated Herterich differently from similarly situated persons, to Herterich's detriment, by deciding Herterich's pretermission claim against him on summary judgment on the basis of purported facts that were unsupported by evidence in the record. No evidence in the record of the Pretermission Proceeding supported, and no evidence in the record of the Pretermission Proceeding could have conclusively established on summary judgment, the determinations that: (1) when the Will was executed Bartsch was aware that Herterich was Bartsch's child; (2) Bartsch paid monthly child support until 1982, when Herterich turned 21 years of age, after making approximately 228 monthly child support payments; (3) when Bartsch executed the Will he was aware that the Court had entered judgment finding that he was the father of Herterich; and (4) when Bartsch executed the Will he was aware that he had paid child support for Herterich for 21 years. In other cases the plaintiffs did not have their cases decided against them on summary judgment on the basis of purported facts that were unsupported by evidence in the record.

141.   On information and belief Herterich alleges that, had Defendants not treated Herterich differently from similarly situated persons, a reasonable adjudication of the Pretermission Petition on the merits in a Constitutionally compliant, fair adversary hearing would have resulted in a determination in Herterich's favor. As a matter of law Bartsch's unambiguous declaration in the Will that he had had no children would have compelled the state courts to conclude that when the Will was executed Bartsch was unaware of the birth of his child within the meaning of California Probate Code § 21622. No evidence indicated otherwise, and no evidence extrinsic to the Will would have been admissible.

///

///

**CLAIM 1: FOR DENYING HERTERICH EQUAL PROTECTION OF THE LAWS**

**Against all Defendants**

142.    All preceding paragraphs herein are part of this claim.

143.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution ("the Equal Protection Clause") provides that no state may deny to any person within its jurisdiction the equal protection of the laws.

144.    At all times relevant Herterich was within the jurisdiction of the State of California, and Defendants were prohibited by the Equal Protection Clause from denying Herterich the equal protection of the laws.

145.    Defendants denied Herterich the equal protection of the laws when, as set forth above, they knowingly and intentionally treated Herterich differently from similarly situated persons, to Herterich's detriment.

146.    Defendants had the opportunity and power under state law to take actions that would have prevented Herterich from being treated differently from similarly situated persons. As state officials having such opportunity and power, Defendants had the sworn duty under state and federal law to take such actions, but Defendants knowingly and intentionally failed to take such actions.

147.    The difference in the treatment of Herterich and those similarly situated caused Herterich to be deprived of his property interest in the relief he would otherwise have obtained from a ruling on the merits of the Pretermission Petition. This deprivation violated the Equal Protection Clause. Persons situated similarly to Herterich were not similarly deprived of their property interests arising from their claims.

148.    There was no rational basis for the difference in treatment of Herterich and those similarly situated. The difference in treatment was not rationally related to a legitimate state interest.

149.    The difference in the treatment of Herterich and those similarly situated amounted to, and cannot reasonably be explained as anything other than, intentional and arbitrary discrimination.

1     150.   The Equal Protection Clause gave Herterich the right to be treated similarly

2   to other similarly situated persons.

3     151.   Defendants had a duty to abide by and give effect to the guarantees of the

4   Equal Protection Clause to equal treatment.

5     152.   Defendants had a duty to treat Herterich similarly to other similarly situated

6   persons and to protect Herterich from being treated dissimilarly.

7     153.   Defendants are persons who, under color of state law, caused Herterich to be

8   subjected to the deprivation of his right to the equal protection of the laws pertaining to

9   his property interest in the relief he would otherwise have obtained from a ruling on the

10  merits of the Pretermission Petition. Herterich's right to the equal protection of the laws

11  was a right secured by federal law, and the denial and violation of that right deprived

12  Herterich of his property interest in the relief he would otherwise have obtained from a

13  ruling on the merits of the Pretermission Petition. Therefore, Defendants are liable to

14  Herterich for Herterich's injuries resulting from the deprivation.

15

16           **CLAIM 2: FOR DEPRIVING HERTERICH OF PROPERTY WITHOUT DUE**

17                                         **PROCESS OF LAW**

18                                        **Against All Defendants**

19     154.   All preceding paragraphs herein are part of this claim.

20     155.   The Due Process Clause of the Fourteenth Amendment to the United States

21  Constitution ("the Due Process Clause") provides that no state may deprive any person of

22  property without due process of law. The Due Process Clause gives owners of property

23  the right to a fair adversary hearing before being deprived of that property.

24     156.   The relief which Herterich would have obtained from a determination of the

25  Pretermission Petition on the merits in a fair adversary hearing is property within the

26  meaning of the Due Process Clause. The Due Process Clause gave Herterich the right not

27  to be deprived of that property by any state without due process of law.

28

157.   Defendants had a duty to abide by and give effect to the guarantees of the Due Process Clause. They had a duty not to deprive any person of property without due process of law. They had a duty not to deprive Herterich without due process of law of the relief which Herterich would have obtained in a fair adversary hearing from a determination of the Pretermission Petition on the merits.

158.   By treating Herterich differently from those similarly situated, as set forth above, Defendants deprived Herterich of the relief which Herterich would otherwise have obtained in a fair adversary hearing from a determination of the Pretermission Petition on the merits, without due process of the law within the meaning of the Due Process Clause.

159.   Defendants did not provide a fair procedure or adequate process when depriving Herterich of his constitutionally protected property rights. Other persons situated similarly to Herterich benefitted from procedure and process which Defendants did not provide to Herterich.

160.   Denying Herterich the relief which he would have obtained in a fair adversary hearing from a determination on the merits of the Pretermission Petition was arbitrary, capricious, and without any legitimate governmental objective.

161.   Defendants took Herterich's property interest purely for the private purpose of benefitting the beneficiaries named in the Will, and therefore the taking is void.

162.   Through their acts and omissions, Defendants violated Herterich's procedural and substantive due process rights under the Due Process Clause.

163.   Defendants are persons who, under color of state law, caused Herterich to be subjected to the deprivation of his right to the relief which he otherwise would have obtained in a fair adversary hearing from a determination on the merits of the Pretermission Petition. Herterich's right to that relief was a right and a property interest secured by federal law. Therefore, Defendants are liable to Herterich for Herterich's injuries resulting from the deprivation.

1    **CLAIM 3: FOR UNREASONABLE SEIZURE OF HERTERICH'S PROPERTY**

2    **Against All Defendants**

3    164.    All preceding paragraphs herein are part of this claim.

4    165.    The Fourth Amendment to the United States Constitution ("the Fourth

5    Amendment") provides that the right of the people to be secure in their houses, papers,

6    and effects against unreasonable seizures shall not be violated. The Fourth Amendment

7    protects property from unreasonable seizure by the government.

8    166.    The relief which Herterich would have obtained in a fair adversary hearing

9    from a determination of the Pretermission Petition on the merits was protected by the

10    Fourth Amendment from unreasonable seizure by the government. The Fourth

11    Amendment gave Herterich the right not to have the government unreasonably seize that

12    property interest.

13    167.    Defendants had a duty to abide by and give effect to the guarantees of the

14    Fourth Amendment. They had a duty not to unreasonably seize property. They had a duty

15    to prevent and mitigate the unreasonable seizure of property by the government. They had

16    a duty not to unreasonably seize, and a duty to prevent and mitigate the unreasonable

17    seizure by the government of, the relief which Herterich would have obtained in a fair

18    adversary hearing from a determination of the Pretermission Petition on the merits.

19    168.    It was not reasonable, and there was no legally valid reason, for Defendants

20    through their actions and omissions to treat or cause Herterich to be treated differently

21    from other persons similarly situated and on the basis of that difference seize Herterich's

22    property interest in the relief sought in the Pretermission Petition.

23    169.    By unreasonably depriving Herterich of his property interest in the relief

24    sought in the Pretermission Petition, and by unreasonably treating Herterich differently

25    from other persons similarly situated, Defendants meaningfully interfered with Herterich's

26    possessory interest in the relief which Herterich otherwise would have obtained from a

27    determination on the merits of the Pretermission Petition. The unreasonable and

28    meaningful interference with Herterich's possessory interest in such relief was an

**COMPLAINT**

1   unreasonable seizure of Herterich's houses, papers, and effects, within the meaning of the

2   Fourth Amendment to the United States Constitution, and violated Herterich's right to be

3   secure against the unreasonable seizure of houses, papers, and effects.

4       170.   Defendants are persons who, under color of state law, caused Herterich to be

5   subjected to the deprivation of his right to the relief which he otherwise would have

6   obtained in a fair adversary hearing from a determination on the merits of the

7   Pretermission Petition. Herterich's right to that relief was a right and a property interest

8   secured by federal law. Therefore, Defendants are liable to Herterich for Herterich's

9   injuries resulting from the deprivation.

10

11   **CLAIM 4: FOR JUST COMPENSATION FOR PRIVATE PROPERTY TAKEN**

12   **FROM HERTERICH FOR PUBLIC USE**

13   **Against All Defendants**

14       171.   All preceding paragraphs herein are part of this claim.

15       172.   The Fifth Amendment to the United States Constitution ("the Fifth

16   Amendment") provides that private property shall not be taken for public use without just

17   compensation.

18       173.   The relief which Herterich would have obtained in a fair adversary hearing

19   from a determination of the Pretermission Petition on the merits is property within the

20   meaning of the Fifth Amendment. The Fifth Amendment gave Herterich the right to just

21   compensation if that property was taken for public use.

22       174.   By their acts and omissions regarding Herterich's property interest in the

23   relief which Herterich would have obtained in a fair adversary hearing from a

24   determination of the Pretermission Petition on the merits, Defendants took Herterich's

25   private property for public use, within the meaning of the Fifth Amendment.

26       175.   Herterich has not received just compensation.

27       176.   Herterich's right to just compensation is secured by the Constitution.

28

177.   Defendants are able and required by the Constitution to provide just compensation for the taking of Herterich's property for public use, but under color of state law and in violation of the Constitution they have not done so.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Norman Bartsch Herterich prays for relief, as follows:

178.   A declaration that the relief which Herterich would have obtained from a Constitutionally compliant determination of the Pretermission Petition on the merits was: (1) an interest that was subject to the equal protection of the laws under the Equal Protection Clause; (2) property within the meaning of the Due Process Clause and the Fifth Amendment; and (3) protected by the Fourth Amendment from unreasonable seizure by the government;

179.   A declaration that by their acts and omissions in the Pretermission Proceeding Defendants: (1) denied Herterich the equal protection of the laws, within the meaning of the Equal Protection Clause; (2) deprived Herterich of property without due process of law, within the meaning of the Due Process Clause; (3) unreasonably seized Herterich's property, within the meaning of the Fourth Amendment; and (4) took Herterich's private property for public use without just compensation, within the meaning of the Fifth Amendment;

180.   A declaration determining according to proof the relief, the monetary value of the relief, and/or just compensation for the taking of the relief which Herterich would or should have obtained from a Constitutionally compliant determination of the Pretermission Petition on the merits;

181.   An injunction ordering Defendants to transfer to Herterich the relief, the monetary value of the relief, and/or just compensation for the taking of the relief which Herterich would or should have obtained from a Constitutionally compliant determination of the Pretermission Petition on the merits;

182.   An injunction ordering Defendants to reimburse Herterich for his attorney's fees and costs incurred in the Pretermission Proceeding, in an amount to be determined according to proof;

183.   Attorney's fees in an amount to be determined according to proof; and

184.   Such other and further relief as the Court deems appropriate and just.

Dated: May 27, 2021

NORMAN BARTSCH HERTERICH
Pro Se Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff Norman Bartsch Herterich demands a trial by jury on each claim.

Dated: May 27, 2021

NORMAN BARTSCH HERTERICH
Pro Se Plaintiff

COMPLAINT